# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD F. DUBE, | ) |
| Plaintiff, | ) |
| | ) No. 09-cv-2378 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| EMIGRANT MORTGAGE CO, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Dube brought this action to enforce the terms of a written mortgage loan agreement stating that the loan's variable interest rate period would be calculated by adding a market-calculated interest index to a "margin" explicitly stated to be "0.000%." Defendant Emigrant Mortgage Company contends that the agreement's designation of a zero margin was a clerical error. It contends that the parties intended that the variable component of the mortgage be calculated by adding a 2.75% margin to the market index. Dube, who has made his mortgage payments at the higher rate under protest, seeks a declaration that he is entitled to the lower rate, and also seeks relief under the Real Estate Settlement Procedures Act (RESPA) for Emigrant's failure to respond to his attorney's inquiries about the issue. In a counterclaim, Emigrant asks that the agreement be reformed to reflect the asserted true intent of the parties, or, in the alternative, that Dube be compelled to specifically perform an agreement to "adjust for clerical errors." Emigrant has moved for summary judgment on all claims. This court finds that one of

the letters from Dube's attorney to Emigrant is not a communication requiring a response under RESPA, and Emigrant's motion for summary judgment is accordingly granted as to that element of Dube's RESPA claim. In all other respects, Emigrant's motion for summary judgment is denied.

## Undisputed Facts

Richard Dube received a mortgage loan from defendant Emigrant Mortgage Company in 2000. The loan was for a 30-year term, and interest on the loan was payable at a fixed rate for the first five years of the loan and a variable rate thereafter. The variable rate was calculated by adding a "margin" of 2.75% to a market-calculated interest index. The parties amended the loan in 2001 and 2002. Each amendment lowered the loan's initial fixed interest rate, extended the fixed-rate period to a date five years from the date of the amendment, and left intact the original method of calculating the interest rate for the variable-rate portion of the loan.

In 2003, Dube sought another change to his loan terms, and Emigrant sent him a document advising that it had approved an amendment to the loan. The document provided that the loan's interest rate could change beginning on October 1, 2008, and that new interest rates would be calculated each year by "adding _____ percentage points (0.000%) (the 'Margin')" to the "Current Index," a rate based on U.S. Treasury security yields. The document was to take effect upon Dube's signature and a payment of a $1250 fee. Dube signed the amendment on November 17, 2003, and the parties do not dispute that he paid the required fee.

In December 2007, Emigrant sent Dube a letter requesting that he sign "a revised modification agreement outlining the terms of you[r] loan." The agreement was identical to the modification Dube had signed in November 2003, with one material exception: it provided that

2

the adjustable rate would be calculated by "adding two and three quarters percentage points (2.750%) (the 'Margin')" to the Current Index.  Emigrant's request asserted that "under the Errors and Omissions Agreement," Dube was "required to sign and return the corrected document in a timely manner."  A copy of that agreement was included: it obliged Dube, if requested, "to fully cooperate and adjust for clerical errors" any loan closing documentation deemed necessary by Emigrant in its reasonable discretion to allow the loan to be transferred or secured.

Dube's counsel responded to Emigrant in a letter dated January 25, 2008.  That letter recited the history of the Dube-Emigrant mortgage documentation and asserted that the November 2003 amendment "is in full force and effect and is not erroneous."  The letter stated that Dube would not sign the requested modification and concluded that "We fully expect that the rate adjustment that becomes effective on October 1, 2008 will be in accordance with the third modification agreement dated November 17, 2003."  Dube's counsel encouraged Emigrant to contact him with any questions.

In August 2008, Emigrant sent Dube a letter advising that under the terms of his mortgage, his interest rate would change effective with the payment due on November 1, 2008.  The letter asserted that the new index rate applicable to Dube's loan was 2.23%, and that his overall mortgage interest rate would be calculated "by adding the margin of 2.750% to the index."  In October 2008, Emigrant sent Dube a bill calculated at an interest rate that included the 2.75% margin.

On October 30, 2008, Dube's counsel sent Emigrant a letter advising that its new charges were at a rate "2.75% per annum above the rate that Emigrant is entitled to charge [Dube] under

3

the terms of the Loan documents." The letter further advised that Dube would pay the amounts billed by Emigrant under protest, reserving his right to seek recovery of overcharges.

The Parties' Claims

This suit followed. Dube claims that Emigrant breached the November 2003 amendment by demanding mortgage interest that includes a 2.75% margin. He seeks a declaratory judgment that the adjustable interest rate for his mortgage must be calculated with a margin of zero. He also claims that his counsel's two letters to Emigrant were "qualified written requests" under the Real Estate Settlement Procedures Act, 12 U.S.C. §2605, which requires a mortgage servicer to respond within 20 days.

In its motion for summary judgment, Emigrant contends that the zero margin provision of the 2003 amendment is an error that should be corrected either by Dube's execution of a new amendment document or by this court's reformation of the contract. Emigrant also argues that the two letters from Dube's counsel are not qualified requests that required a response under RESPA.

Emigrant supports its assertions about the 2003 amendment with evidence demonstrating that it did not offer adjustable rate mortgages without charging a margin above the market index and that no other lender offered a zero margin mortgage. Emigrant further argues that no lender would have offered a zero margin rate because the margin represented its profit and because the $1250 fee paid by Dube was too small an amount to induce any lender to forgo a 2.75% annual return for 25 years of a loan of more than $1 million. None of the evidence offered by Emigrant is sufficient to support a grant of summary judgment on any of the claims seeking an adjudication of the parties' rights under the 2003 amendment.

Summary judgment is appropriate if a case presents no genuine issue as to any material fact, and a genuine issue exists where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *AA Sales & Associates, Inc. v. Coni-Seal, Inc.,* 550 F.3d 605, 608-09 (7th Cir. 2008). This case presents a genuine issue as to whether the November 2003 amendment accurately reflected the parties' intentions.

The evidence supporting Dube's view of the parties' agreement is the amendment itself: it is assumed that a written agreement expresses the mutual intention of the parties, and this presumption cannot be overcome in the absence of clear and convincing evidence to the contrary. *Suburban Bank of Hoffman-Schaumburg v. Bousis,* 144 Ill. 2d 51, 58-59 (1991), *Balark v. Curtin,* 655 F.2d 798, 800 (7th Cir. 1981). On the basis of the amendment itself, a jury could find that Dube was entitled to a zero margin loan and that he must prevail on his claims for breach of contract and declaratory judgment.

To establish that a written contract included a term not included in the document, it must be shown that the parties reached agreement on the unwritten term and that through either mutual mistake or mistake by one party and fraud by the other, the term was omitted from the written document. *Suburban Bank,* 144 Ill. 2d at 58; *Indiana Insurance Co. v. Pana Community Unit School Dist. No. 8,* 314 F.3d 895, 903-04 (7th Cir. 2002).

The evidence presented by Emigrant here demonstrates only its own likely intentions at the time of the 2003 amendment, and makes no showing that Dube either shared its view of the agreed terms or that he induced the amendment through fraud. Emigrant's only suggestion of evidence of Dube's intent is a single response to a deposition question: when asked why he was pursuing this action, Dube answered, "I believe they've made an error." (Deposition of Richard

Dube, Exhibit A to Defendant's Reply In Support Of Summary Judgment, Docket #33, p. 13.) This statement is far too ambiguous to be construed as an admission. The "error," from Dube's viewpoint, could well have been Emigrant's refusal to abide by the language of the 2003 amendment rather than the zero margin language itself. Every other aspect of the evidence cited by Emigrant as support for its motion shows only that a lender in its position would not have intended to give a customer a zero margin loan. None of the evidence hints that Dube did not intend to accept such a loan. The record instead indicates that Emigrant sent the 2003 amendment to Dube and that he signed and returned it without discussion.

Emigrant argues that its motion for summary judgment must be granted because Dube identifies no evidence that the parties reached agreement on removing the 2.75% margin that had been present in the original loan and two prior modifications. But, as noted above, the amendment itself is that evidence, and the burden of proof is on Emigrant to prove an agreed departure from the language of the document (see *Balark v. Curtin,* 655 F. 2d at 800), not on Dube to prove an agreed departure from prior loan terms.

Emigrant cites *Hanes v. Roosevelt National Life Insurance Co.,* 116 Ill. App. 3d 411 (1983) as support for its reformation claims. But *Hanes* was decided after a trial, not on a motion for summary judgment. 116 Ill. App. 3d at 414-15. A summary judgment proceeding is not commonly the appropriate means of resolving disputes regarding alleged agreement to terms not reflected in the parties' written contract. See *Charbonnages de France v. Smith,* 597 F.2d 406, 415 (4th Cir. 1979).

This court finds that a genuine dispute exists regarding the mutuality of any mistake reflected in the November 2003 mortgage amendment. This dispute is clearly material to the

parties' claims regarding the effect and treatment of the amendment. Emigrant is not entitled to a judgment on Dube's breach of contract and declaratory judgment claims or its own reformation claim if the dispute is not resolved in its favor. The dispute is also central to Emigrant's claim for specific performance. Dube is required by the Error And Omissions agreement to adjust for "clerical errors." The clear meaning of this term is that Dube must sign documents that correctly reflect the agreement of the parties, not that he must sign documents containing terms he did not agree to. Emigrant is not entitled to compel Dube to sign an amendment reflecting a 2.75% margin in the absence of the same proof required for the other element claims: that the agreement actually signed in November 2003 was an error.

This court therefore concludes that, on the record established, the parties' claims regarding the proper treatment of the November 2003 amendment are not appropriately resolved by summary judgment. Emigrant's motion for summary judgment on Dube's breach of contract and declaratory judgment claims and on its own claims for specific performance or reformation is accordingly denied.

Emigrant also seeks summary judgment on Dube's RESPA claims. The relevant portion of the RESPA statute, 12 U.S.C. §2605(e), requires a mortgage servicer to respond to a "qualified written request" within 20 days, and defines a qualified written request as a written correspondence that enables the servicer to identify the name and account of the borrower and includes a statement of the reasons for the borrower's belief that the account is in error.

The January 2008 letter from Dube's counsel to Emigrant did not respond to a statement of the status of Dube's mortgage account, did not address any alleged error in a statement of that account, and did not seek any account information. Instead, it explained why Dube was

7

declining to sign a requested modification document. It stated Dube's expectations about the future treatment of his account, and invited Emigrant to contact Dube's counsel with any questions regarding the matter. Statements of an account holder's expectations about the future handling of his account are not qualified written requests under RESPA. *Catalan v. GMAC Mortgage Corp.,* 629 F.3d 676, 688 (7th Cir. 2011). This court concludes that the January 2008 letter was not a qualified written RESPA request, and grants Emigrant's motion for summary judgment on Dube's RESPA claim to the extent that it seeks relief for the failure to respond to that letter.

The October 2008 letter, however, did explicitly respond to a mortgage account statement sent by Emigrant and did identify Dube's reasons for a belief that the statement was in error: according to Dube, it used the wrong interest rate to calculate his payment. The clear statement of the reasons for the borrower's belief that the account statement was in error made this letter a qualified RESPA request. *Catalan,* 629 F.3d at 687. To the extent that Dube's RESPA claim seeks relief for Emigrant's failure to respond to that letter, Emigrant's motion for summary judgment is denied.

Conclusion

For the reasons stated above, Emigrant's motion for summary judgment on Dube's breach of contract and declaratory judgment claims and on Emigrant's own specific performance and reformation claims is denied. Emigrant's motion for summary judgment on Dube's RESPA claim for failure to respond to the October 2008 letter is also denied. Emigrant's motion for summary judgment on Dube's RESPA claim for failure to respond to the January 2008 letter is granted.

So ordered.

March 30, 2011

_____

Sharon Johnson Coleman
District Judge

9